USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/25/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Tommy Barnes,

               Plaintiff,

       –v–

City of New York, *et al*.,

           Defendant.

---

18-cv-7119 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff brings claims pro se against the City of New York and various officers for violating his constitutional rights under 42 U.S.C. §§ 1983, 1985 and for violations of his rights under the New York State Constitution, as well as multiple state law torts. Defendants filed a motion for judgment on the pleadings, and while that motion was pending, Plaintiff filed a motion for summary judgment. The Court grants Defendants motion for judgment on the pleadings Plaintiff's federal law claims and declines to exercise jurisdiction over his state law claims.

## I.  Background

Plaintiff was arrested on January 21, 2014 and charged with Criminal Sale and Criminal Possession of a Controlled Substance in the Third Degree pursuant to New York's Penal Law §§ 220.39 and 220.16. Dkt. No. 63, Ex. C. Following a jury trial, Plaintiff was acquitted on the criminal sale charge and convicted for criminal possession, for which he was sentenced on January 18, 2019 to fifteen years in prison and three years of post-release parole supervision. *Id*., Ex. D.

1

Plaintiff alleges that prior to his arrest, he had been speaking with an acquaintance when Defendant officers suddenly arrested and searched him without cause.  Dkt. No. 2, ¶¶ 9, 11, 12. According to Plaintiff, Defendant officers "grabbed the plaintiff with great force" and placed handcuffs on him so tightly that his hands and forearms were swollen for six days following the arrest; the Plaintiff was prescribed medicine for the swelling.  *Id*. at ¶ 11.  Plaintiff further alleges that Defendant police officers falsely stated to prosecutors that Plaintiff had sold controlled narcotics, and Plaintiff contends that the Defendant officers who were present during the arrest knew the charges were false but did nothing to intervene.  *Id*. at ¶¶ 16, 23, 34.

On August 7, 2018, Plaintiff filed a Complaint in this Court against Defendants City of New York, Sergeant Kenneth Caesar, Officer Michael Manetta, and Officer Nicholas Mauceli seeking compensatory and punitive damages in connection with his arrest on January 21, 2014 and his resulting prosecution for narcotics possession and dealing. The Plaintiff alleges that Defendants are liable to the Plaintiff for violations of 42 U.S.C.§§ 1983 and 1985, assault and battery, negligent and intentional infliction of emotional distress, negligent hiring and retention of police officers, and violations under Article 1 of the New York State Constitution, as well as conspiracy to violate that article.  Dkt. No. 2.

Defendants filed an Answer on February 1, 2019, denying the majority of allegations in the Complaint and asserting various affirmative defenses.  Dkt. No. 28.  On November 8, 2019, the Defendants filed a motion for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c).  Dkt. No. 62.  While the Defendants' motion was pending, the Plaintiff filed a motion for summary judgment on December 17, 2019.  Dkt. No. 71.  Both parties' motions are fully briefed as of February 18, 2020.

**II.    Discussion**

2

Defendant moves for judgment on all of Plaintiff's claims under Federal Rules of Civil Procedure 12(c).  "The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6)."  *Rojas v. Berryhill*, 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019) (citing *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011)).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, when a plaintiff is proceeding pro se, the Court holds the pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).  That is to say, the Court will liberally construe the complaint when deciding the motion to dismiss.  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).  However, "the duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) (alteration in original) (citation omitted).  If a pro se plaintiff has not pled sufficient facts to state a claim that is plausible on its face, the Court must dismiss his complaint.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

3

For the following reasons, the Court determines that Plaintiff has failed to state a claim for all of his federal law claims.  The Court also declines to exercise jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

**A.  Plaintiff's claims against Defendant police officers under Sections 1983 and 1985**

The Plaintiff claims that the Defendant police officers violated 42 U.S.C. § 1983 for conduct amounting to (1) false arrest, (2) excessive use of force, (3) failure to intervene, (4) unlawful search and seizure, (5) fabrication of evidence, (6) denial of due process, (7) denial of a fair trial, (8) malicious prosecution, and (9) abuse of process, in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.  Dkt. No. 2 ¶¶ 26-27.  The Plaintiff further claims that the officers violated 42 U.S.C. § 1985 by conspiring to deprive the Plaintiff of his Fourth, Fifth, Sixth and Fourteenth Amendment rights.  *Id*. ¶¶ 40-42.

**1.  Plaintiff's claims for false arrest, excessive force, unlawful search and seizure, failure to intervene, and conspiracy are time-barred**

Plaintiff pleads that on the night he was arrested, searched, and detained by Defendant officers on January 21, 2014, he was subjected to false arrest, excessive force, unlawful search and seizure, failure to intervene, and conspiracy to deprive him of his constitutional rights.  Dkt. No. 2 ¶¶ 27, 41.

Plaintiff's section 1983 and 1985 claims are subject to a three-year statute of limitations. The statute of limitations for claims under 42 U.S.C. § 1983 is the "statute of limitations applicable to personal injuries occurring in the state in which the appropriate federal court sits." *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993).  Here, that period is three years because Plaintiff's Complaint states actions for personal injury in New York.  *See id.* (citing N.Y. C.P.L.R. § 214(5)).  The same is true for claims brought under 42 U.S.C. § 1985.  *See Lilly v. Town of Lewiston*, 582 F. App'x 55, 56 (2d Cir. 2014).

All of Plaintiffs claims accrued on January 21, 2014.  Section 1983 actions begin to accrue when "the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citation omitted).  Plaintiff asserts that "on or about January 21, 2014 . . . defendant officers, acting in concert, arrested plaintiff without cause," during which they "grabbed the plaintiff with great force," and "immediately ordered by defendant officers to submit himself to an illegal search."  Dkt. No. 2, ¶¶ 9-13.  Therefore, Plaintiff knew or should have known that he was subjected to false arrest, excessive force, unlawful search and seizure, and failure to intervene on January 21, 2014, and the statute of limitations for those claims therefore began to run on that date.  *See Wallace v. Kato*, 549 U.S. 385, 397 (2007) (the limitations period for a claim for false arrest begins to run when the claimant is detained); *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (limitations period for a claim for excessive force began on the date when the force occurred); *Mercano v. City of New York*, 2017 WL 1969676 at *3 (S.D.N.Y. May 12, 2017) (limitations period for a claim for failure to intervene began on the date of the arrest); *Tellier v. Krimmer*, 1996 WL 518108 at *1 (E.D.N.Y. Sept. 4, 1996) (the limitations period began to run when the search and seizure occurred).

Plaintiff's conspiracy claim is likewise time-barred by the three-year limitations period. For a conspiracy claim, "the cause of action accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damage."  *Chodos v. F.B.I.*, 559 F. Supp. 69, 74 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 289 (2d Cir. 1982).  Plaintiff alleges that Defendants took "numerous overt steps in furtherance" of their conspiracy to violate his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, as described in the fact section of his Complaint. The overt acts he describes are those he alleges occurred on January 21, 2014 when the officers

forcibly arrested him and searched him.  Dkt. No. 2, ¶¶ 9-13.  Therefore, Plaintiff's conspiracy claim accrued on that date.

Considering that the date of accrual is January 1, 2014, Plaintiff's claims are untimely. Plaintiff filed his Complaint on August 7, 2018, *see* Dkt. No. 2, more than three years after that date.

Plaintiff argues in response that he did not file his Complaint sooner because he believed, incorrectly, that the cause of action would not accrue until the criminal proceedings had terminated in his favor.  *See* Dkt. No. 85.  The Court interprets pro se Plaintiff's argument that his failure to comply with the statute of limitations be forgiven because of his mistake as a request for equitable tolling.  *See McLeod*, 864 F.3d at 156 (explaining that courts should liberally construe submissions from pro se litigants).  While courts have considered equitable tolling for late section 1983 claims in extraordinary circumstances, such as where police misconduct or other circumstances outside of a plaintiff's control prevent them learning that their claim has accrued, *see Pearl*, 296 F.3d at 84-86, such circumstances are not present here, where Plaintiff simply misunderstood the law.  Plaintiff's claims for false arrest, excessive force, unlawful search and seizure, failure to intervene, and conspiracy are therefore dismissed with prejudice as time-barred.

## 2. Plaintiff has failed to state a claim for fabrication of evidence and denial of the right to a fair trial.

Plaintiff claims that while he was awaiting arraignment, "defendant officers met with prosecutors" and "falsely stated to the prosecutors, among other things, that plaintiff sold [a] controlled substance," and that a prosecution was commenced against him "[b]ased on the false testimony."  Dkt. No. 2. ¶¶ 15-16.  Plaintiff alleges the officers conduct amounts to fabrication of evidence and a denial of his right to a fair trial.  *Id*. at ¶ 27.

6

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983*." Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).  Moreover, a "fair trial claim based on fabricated evidence can be sustained even if the officer had probable cause to arrest in the first place." *Hincapie v. City of New York*, 434 F. Supp. 3d 61, 75 (S.D.N.Y. 2020).  To state a claim for lack of a fair trial due to the fabrication of evidence, Plaintiff must show that an "(1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012).

Plaintiff has failed to allege at least two of the elements for a claim for fabrication of evidence.  First, Plaintiff has not plausibly alleged that an "investigating official" actually "fabricate[d] evidence." *Id*.  Plaintiff states in the Complaint that the officers "falsely stated to the prosecutors. . . that plaintiff sold controlled substance," Dkt No. 2 ¶ 16, a charge for which he was later acquitted.  While it is true that the information may have in fact been false, that does not necessarily mean that evidence was fabricated.  For fabrication, Plaintiff must show that the officers knew the statements were false and made them anyway. *See Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) ("[G]overnment officials may be held liable for fabricating evidence through false statements or omissions that are both material and made knowingly.").  Plaintiff does state that "each and every officer . . . knew and was fully aware that plaintiff did not commit any crime or offense." Dkt. No. 2 ¶ 23.  However, he provides no facts to support this conclusion – a conclusion that contradicts the record of this case, as Plaintiff was convicted of

possessing a controlled substance – and mere conclusions themselves are insufficient to survive a

motion to dismiss pursuant to 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

(allegations in pleadings that are "no more than conclusions, are not entitled to the assumption of

truth.").  Therefore, Plaintiff has not plausibly alleged that the officers knew that Plaintiff had not

sold a controlled substance and purposefully lied to the prosecutor about it anyway, as opposed

to genuinely believing the statement to be true as a result of their investigation.  *See Walker v.

City of New York*, 638 F. App'x 29, 33 n.2 (2d Cir. 2016) (affirming dismissal in part because it

was the Plaintiff's "burden to show that" Defendant's statement "was a fabrication," and "no

record evidence supports such a conclusion.").

Second, even if the officer's statements were knowingly fabricated and not just false,

Plaintiff has still failed to state a claim because he has not shown that those statements caused a

deprivation of his liberty.  The "manufacture of false evidence, in and of itself . . . does not

impair anyone's liberty," *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) (quotations

omitted), and therefore "in order to state a legally sufficient claim . . . a plaintiff must colorably

allege that this evidence . . . cause[d] a constitutional injury," *Rolon v. Henneman*, 517 F.3d 140,

148 (2d Cir. 2008).   It follows that where the exact same deprivation would have happened

regardless of the fabricated evidence, a plaintiff cannot make a fabrication of evidence claim.

*See McIntosh v. City of New York*, 722 F. App'x 42, 45 (2d Cir. 2018)  (holding that there was no

basis to find that Plaintiff "suffered a deprivation of liberty as a result of fabricated evidence

because her arrest was supported by probable cause, she was subsequently released on her own

recognizance at her arraignment, and the charges against were dismissed shortly thereafter.");

*Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017) (holding that a fabricated statement in a

warrant did not result in any deprivation because even without the statement there would have been probable cause for the search and seizure).

While Plaintiff can show that he suffered a deprivation of liberty because he was detained while his trial was pending, he cannot show that the officer's statements caused that deprivation. As Defendants explain, Plaintiff would have been held in the same place for the same amount of time because he was also charged with, and convicted of, Criminal Possession of a Controlled Substance in the Third Degree, which is also a Class B felony. *See* Mot. Dismiss at 22.  Plaintiff does not allege that he suffered any other deprivation of his liberty that was caused by the officer's statements.  Plaintiff's claim that he was denied a fair trial due to fabricated evidence is therefore dismissed for failure to state a claim.

### 3.  Plaintiff has failed to state a claim for malicious prosecution

Plaintiff alleges that the "conduct of defendant officers" amounted to "malicious prosecution."  Dkt. No. 2 ¶ 27.

Defendants argue that these claims are barred by the rule in *Heck v. Humphrey* that a Section 1983 claim cannot be brought where resolution in Plaintiff's favor would undermine an outstanding criminal conviction.  512 U.S. 477, 486-87 (1994).  To the contrary, a resolution in Plaintiff's favor for the malicious prosecution claim or denial of due process rights as to his prosecution for the sale of a controlled substance would not disturb Plaintiff's conviction for the possession of a controlled substance.  The Court could in theory find that there was no probable cause to prosecute the sale of controlled substances claim, and that would not disturb the state court's determination that there was probable cause for Plaintiff's arrest.  *See Gannon v. City of New York*, 917 F. Supp. 2d 241, 244 (S.D.N.Y. 2013) (noting that the "defendants seem to conflate probable cause to arrest with probable cause to believe that the plaintiff could be

successfully prosecuted," and that "[o]nly the latter kind of probable cause is at issue with respect to the malicious prosecution claim.") (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999) (cleaned up)).

Plaintiff has nonetheless failed to state a claim for malicious prosecution or denial of due process rights under Section 1983.

In order to "establish a claim for malicious prosecution under New York law, the plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Posr v. Court Officer Shield No. 207*, 180 F.3d at 417. Because Plaintiff brings his claim under Section 1983, it is not enough to allege these tort law elements, he must also show that the conduct violated a constitutional right, as "it is only the violation of the constitutional right that is actionable and compensable under § 1983." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). Plaintiff does not explicitly state, however, which amendment he is bringing his malicious prosecution claim under, though he references the Fourth, Fifth, Sixth, and Fourteenth Amendments as generally applying to the allegations in his Complaint. In the Second Circuit, section 1983 malicious prosecution claims are brought pursuant to the Fourth Amendment. *See Coleman v. City of New York*, 688 F. App'x 56, 57 (2d Cir. 2017) ("[A] malicious prosecution claim brought under § 1983 is grounded in the Fourth Amendment) (citing *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994)); *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997) ("[i]n order to prevail on such a claim under § 1983, the plaintiff must show a violation of his rights under the Fourth Amendment") (citing *Albright*, 510 U.S. at 274-275). The Court will therefore liberally

construe Plaintiff's pro se complaint as bringing a claim for malicious prosecution under the Fourth Amendment. *See McLeod*, 864 F.3d at 156.

Plaintiff, however, cannot succeed on this claim. "A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must [] show some deprivation of liberty consistent with the concept of seizure." *Singer*, 63 F.3d at 116 (internal quotation marks omitted). Plaintiff's claim therefore fails for same reason as his fabrication of evidence claim: he has not alleged that his prosecution for the sale of controlled substances resulted in any "deprivation of liberty" outside of that caused by his prosecution for possession of controlled substances. *Singer*, 63 F.3d at 116. *See also Coleman*, 688 F. App'x at 58 (explaining that even if the defendant's liberty was restricted by having to appear in court to defend charges not based on probable cause, he would have had to appear in court on other valid charges, and therefore the conduct amounting to malicious prosecution did not cause a constitutional injury). Plaintiff therefore has failed to state a claim for malicious prosecution pursuant to Section 1983.

### 4.  Plaintiff has failed to state claim for denial of due process rights

Plaintiff alleges that the conduct of the officers violated his "due process rights," but does not specify whether he is referring to his substantive or procedural due process rights, or both. To the extent Plaintiff claims that the malicious prosecution of the sale of a controlled substance charge violated his substantive due process rights under the Fourteenth Amendment, that claim fails because "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution." *Singer*, 63 F.3d at 114 (citing *Albright*, 510 U.S. at 275). As explained above, section 1983 malicious prosecution claims are brought pursuant to the Fourth Amendment.

Additionally, outside of the specific claims made in his Complaint that are addressed elsewhere in this opinion (e.g., unlawful search and seizure), Plaintiff does not allege how the conduct of the officers otherwise violated his substantive due process rights.  And to the extent Plaintiff is making a procedural due process claim, Plaintiff does not allege that the Defendants failed to provide him adequate procedures – indeed he was provided a full trial, after which he was acquitted of the sale of a controlled substance charge.  *See Zinermon v. Burch*, 494 U.S. 113, 126, (1990) (explaining that for a procedural due process claim, "the constitutional violation actionable under § 1983 is not complete when the deprivation occurs," but only "unless and until the State fails to provide due process.").  Plaintiff therefore has failed to state a section 1983 claim for denial of his due process rights.

### 5.  Plaintiff has failed to state a claim for abuse of process

Plaintiff claims that the "conduct of defendant officers" amounted to "abuse of process." Dkt. No. 2 ¶ 27.

Plaintiff has failed to adequately plead such a claim.  The elements of a malicious abuse of process claim in New York are that a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  Plaintiff cannot satisfy this third element.  Plaintiff must show that Defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003).  In other words, the goal of the alleged abuse of process cannot be the criminal conviction of the defendant. *See Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) ("[T]ampering with evidence is not considered abuse of process because the goal—convicting

the defendant—is a legitimate use of process."). Plaintiff, however, does not allege any facts in

his Complaint suggesting that the officers initiated this case against him for some purpose other

than to obtain his criminal conviction. This claim is therefore dismissed for failure to state a

claim.

**B.  Plaintiff's claims for municipal liability under Sections 1983 and 1985.**

The Plaintiff claims that the City of New York, through the New York Police

Department, Department of Corrections, and District Attorney's Office had actual and de facto

policies, customs and practices resulting in constitutional violations and that it failed to train,

supervise, and discipline police officers, corrections officers, and assistant district attorneys in

complying with their constitutional obligations in the discharge of their duties. *See* Dkt. No. 2 ¶¶

31-33.

Plaintiff's claims must be dismissed. Plaintiff has not alleged that he suffered any

constitutional violations from individual officers or employees, and therefore he cannot allege

that the City's alleged policies or practices caused any such violation. *See City of Los Angeles v.

Heller*, 475 U.S. 796, 799 (1986). Furthermore, even assuming that Plaintiff had plausibly plead

that the individual officers and employees violated Section 1983, he nonetheless still has not

provided sufficient facts to state a claim against the City.

**1.  Plaintiff cannot state a claim for municipal liability because he has not plausibly
    alleged he suffered any constitutional violations.**

Because Plaintiff has failed to allege that any of the Defendant officers violated any of

his constitutional rights, *see supra* Part II.B, his claims for municipal liability cannot stand. The

Supreme Court has made clear that there may not be "award of damages against a municipal

corporation based on the actions of one of its officers when in fact the jury has concluded that the

officer inflicted no constitutional harm," because "[i]f a person has suffered no constitutional

13

injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Heller,* 475 U.S. at 799.  This is true not only for Defendants claim regarding the actual and de facto policies of the municipality, but also for a failure to train officers.  *See Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) (relying on *Heller* to determine that "a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights.").

### 2. Plaintiff has failed to allege sufficient facts showing that the City of New York had a policy, practice, or custom in place that caused his alleged injuries.

Even if Plaintiff had plausibly alleged that he suffered constitutional violations, Plaintiff has nonetheless failed to state a claim that the City of New York had a policy, practice, or custom in place that caused those violations.

A municipality may "be sued under § 1983 . . .  when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" in question.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Therefore, Plaintiff must plausibly allege that there was "(1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007).  However, a complaint's "mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds*, *Leatherman v. Tarrant Cty. Narcotics & Coordination Unit*, 507 U.S. 163 (1993).  Therefore, "boilerplate language echoing the requirements contained in *Monell*," *Green v. City of Mount*

*Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015), will not survive a motion to dismiss and

Plaintiff must provide detailed factual allegations showing the existence of these alleged policies.

Plaintiff describes the City of New York's alleged policies, practices, or customs as

follows: "wrongfully arresting, illegally strip searching, abusing, humiliating, degrading and/or

maliciously prosecuting individuals who are members of racial/ethnic minority groups . . . under

the pretext that they were involved in narcotics and/or drug transactions." Dkt. No. 2 ¶ 34.

However, Plaintiff provides inadequate factual allegations to establish that the City of New York

had any such policies, practices, or customs and therefore his claim must be dismissed.

First, Plaintiff alleges that the presence of numerous other lawsuits in the district alleging

the same or similar policies shows that the City in fact has such policies. Dkt. No. 2 ¶¶ 35-36.

But the mere fact that a handful of similar lawsuits have been filed, specifically where a Court or

jury has not conclusively determined such a policy existed, is hardly factual support for the

existence of a widespread policy. *See Beltran v. City of New York*, 2020 WL 4260990, at *4

(S.D.N.Y. July 22, 2020) ("Citing various lawsuits alleging police misconduct in various

contexts alone is insufficient to plead the existence of municipal policies.") (citing *Jean-Laurent*

*v. Wilkerson*, 461 F. App'x 18, 22-23 (2d Cir. 2012)); *Isaac v. City of New York*, 2018 WL

5020173, at *17 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, 2018 WL

4583481 (E.D.N.Y. Sept. 24, 2018) ("[U]nproven allegations in a handful of cases –whether

involving these defendants or other officers—do not plausibly allege the existence of an

unconstitutional policy, sufficient to defeat a motion to dismiss a Monell claim."). Plaintiff's

citation to *Colon v. City of New York*, 2009 U.S. Dist. LEXIS 110520 (E.D.N.Y. Nov. 25, 2009),

where the Court found that anecdotal evidence of "widespread fabrication" was enough to

survive a motion to dismiss for Plaintiff's *Monell* claim, is also unavailing. Plaintiff's "citation

of an unrelated action, in which another district court addressed the sufficiency under

Fed.R.Civ.P. 12(b)(6) of a separate complaint premised on a different set of factual allegations,"

that "does not support an inference that [the plaintiff's] injuries were caused by the City's failure

to train its employees," because "neither the judge nor a jury found as a fact that the City

employed harmful practices or policies" in the other action.  *Simms v. City of New York*, 480 F.

App'x 627, 630 (2d Cir. 2012) (referring to *Colon*) (internal quotations and brackets omitted).

　　Plaintiff also points to a statement from Deputy Commissioner Browne in 2006 that

police commanders are permitted to set "productivity goals," which Plaintiff refers to as arrest

quotas.  Dkt. No. 2 ¶¶ 35-36.  This statement is likewise insufficient to plausibly allege the

existence of a widespread policy.  First, the statement was nearly a decade old at the time that

Plaintiff was arrested in 2014, which greatly dilutes the inference that the policy described by the

deputy commissioner was operative when Plaintiff allegedly suffered his injuries.  *See Beltran,*

2020 WL 4260990, at *4 ("[P]ublic concessions by former NYPD Commissioners in various

settings that plaintiff cites in the Complaint have only minimal, if any, probative value as to the

current existence of the alleged practices given the temporal gap between those statements and

plaintiff's allegations.").  *See also Gomez v. City of New York*, 2017 WL 1034690, at *11

(E.D.N.Y. Mar. 16, 2017) (finding the same statement by Deputy Commissioner Browne to be

"insufficient" support for the plaintiff's *Monell* claim).  And Plaintiff provides no other factual

allegations to show that the alleged policy was in place at the time of his injuries, let alone that

the officers in question were acting pursuant to any such policy.  *Cf. Rodriguez v. City of New*

*York*, 291 F. Supp. 3d 396, 420 (S.D.N.Y. 2018) (Granting summary judgment in part because

there was "no evidence that the officers or precinct involved in Plaintiff's arrest were subject to

an alleged quota or productivity goal system.").  Plaintiff therefore has not "allege[d] facts

tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Culpepper v. City of New York*, 2018 WL 1918619, at *8 (S.D.N.Y. Apr. 20, 2018) (holding that "Plaintiff ha[d] not alleged facts sufficient to show a policy of arresting innocent persons in order to meet 'productivity goals.'") (internal quotation marks omitted).

### 3. Plaintiff has failed to state a claim that the City of New York's official policy or custom of failing to train its officers and attorneys caused Plaintiff's injuries.

Plaintiff alleges the City of New York has a policy or custom of failing to properly train, supervise or discipline its (a) "officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest," (b) "correction officers concerning the correct practices in holding, taking and/or accepting custody of innocent persons and/or inmates, permissible search of innocent persons and/or inmates, ensuring the safety and protection of innocent persons and/or inmates," and (c) "assistant district attorneys and employees concerning the correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and /or obligation of candor toward the court." Dkt. No. 2 ¶¶ 31-33.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Failure to train claims, however, are the most difficult claims for municipality liability to make out under § 1983. *See id* ("A municipality's culpability for a deprivation of rights is at its most

tenuous where a claim turns on a failure to train.").  Furthermore, the failure to train should only

be considered a policy or custom where that failure "amounts to 'deliberate indifference' to the

rights of those with whom the city employees interact."  *Wray v. City of New York*, 490 F.3d 189,

195–96 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).   Alleging

"deliberate indifference" requires showing that "[i] a policymaker knows 'to a moral certainty'

that city employees will confront a particular situation; [ii] the situation either presents the

employee with 'a difficult choice of the sort that training or supervision will make less difficult'

or 'there is a history of employees mishandling the situation;' and [3] 'the wrong choice by the

city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Id.*

(quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.1992)).  Moreover,

"conclusory allegations that the City's policy, custom, practice, or failure to train its employees

led to [Plaintiff's] constitutional rights being violated are insufficient to survive a motion to

dismiss." *Cotto v. City of New York*, 2020 WL 1228765 (2d Cir. Mar. 13, 2020) (citing *Twombly*,

550 U.S. at 555).

   Plaintiff's allegations that the City of New York had a policy or custom of failing to train

its police officers, correction officers, and assistant district attorneys on basic functions of

investigations, handling of detainees, and prosecution of cases are entirely conclusory and

therefore insufficient to survive Defendants' motion to dismiss.  Plaintiff provides no factual

support for his assertion that the City in fact failed to train its officers or attorneys on any

practice or procedure (other than pointing to the lawsuits discussed in Part II.B(i), which, as the

Court has explained, have little to no probative value).  *See Roundtree v. City of New York*, 2018

WL 443751, at *9 (S.D.N.Y. Jan. 16, 2018) (dismissing because Defendant did "not assert any

factual allegations to support" his failure to train claim and "his allegations fall far short of

establishing" a pattern of constitutional violations by similar employees.); *Gomez v. City of New York*, 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017) (dismissing because the "Complaint's allegations with regard to municipal liability largely consist of unsupported, conclusory statements that the City knowingly failed to supervise and discipline NYPD officers," and "[a]bsent specific alleged examples or supporting evidence, such allegations will not sustain a Monell claim.").  Moreover, Plaintiff also does not allege deliberate indifference.  While he claims the City maintained the policy or custom of failing to train "knowing full well" that it would "lead to improper conduct by its police officers and employees," and that this amounted to "act[ing] with deliberate indifference," Comp. ¶ 37, this bare conclusion is insufficient to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 555 ("[L]abels[,] [] conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

### C.  Plaintiff's state law claims

In addition to his Section 1983 and 1985 claims, Plaintiff brings various claims under state law.  He says that Defendants conduct violated his rights under Article 1, sections 5, 6, 8, 11, and 12 of the New York State Constitution, and constituted to assault, battery, negligent and intentional infliction of emotional distress, and negligent hiring and retention of employment services under state law.  Dkt. No. 2 ¶¶ 44-62.

The Court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Supreme Court has instructed that "when the federal law claims have dropped out of the lawsuit in the early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988*). See also Delaney v. Bank of Am. Corp*., 766 F.3d 163, 170 (2d Cir. 2014) ("In

general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.") (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir.1998)).

Because Plaintiff has failed to plausibly allege a claim for relief under federal law, the Court declines to exercise jurisdiction over his state law claims. Those claims are dismissed without prejudice.

### III.   Conclusion

For the reasons stated above, Defendants' motion is GRANTED and Plaintiff's federal claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction of the state claims. In light of these rulings, Plaintiff's motion for summary judgment is administratively denied. This resolves docket numbers 51, 62, and 71. The Clerk is respectfully directed to mail a copy of this opinion and order to the Plaintiff and close the case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).


SO ORDERED.

Dated:  November 24, 2020
         New York, New York

_____
ALISON J. NATHAN
United States District Judge

20