UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                  :

TOMMY BARNES,                         :

                         Plaintiff,     :

                                                   :                18 Civ. 7119 (LGS)

                -against-                    :

                                                   :           **OPINION AND ORDER**

THE CITY OF NEW YORK, et al.,      :

                              Defendants. :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Tommy Barnes, proceeding *pro se*, brings this action against the City of New York (the "City"), Sergeant Kenneth Caesar, Officer Michael Manetta and Officer Nicholas Mauceli (the "Officers"), asserting various claims under 42 U.S.C. § 1983 and New York state law.  On remand from appeal, Plaintiff's remaining claims are (1) the federal due process claim asserting the fabrication of evidence underlying the drug sale charge of which Plaintiff was acquitted, against the Officers only, (2) the new *habeas corpus* claim and (3) the state law claims, against both the City and the Officers.  *See Barnes v. City of New York*, 68 F.4th 123 (2d Cir. 2023).  The parties cross-moved for summary judgment on all claims.  For the following reasons, summary judgment is denied on the federal fabrication claim and is granted to Defendants and denied to Plaintiff on all other claims.

## I.      BACKGROUND

The following facts are drawn from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and other submissions on the motions.

On January 21, 2014, when Plaintiff was talking with another person, the Officers arrested and searched both men, recovered what appeared to be unlawful drugs from both, and charged Plaintiff with possession and sale of a controlled substance.  The criminal complaint in

the state court states that Officer Mauceli observed Plaintiff provide a small object to the other

person in exchange for money, and that Officer Manetta searched Plaintiff and recovered a

container containing twenty-six bags of crack cocaine.  Plaintiff maintained that he neither

owned nor sold drugs.  On June 9, 2016, a jury acquitted Plaintiff of the sale but convicted him

of possession.  Plaintiff was sentenced principally to fifteen years of imprisonment.  Plaintiff

challenged his conviction and sentence in the trial court and the Appellate Division but was

unsuccessful.  *People v. Barnes*, No. 435/2014, 2016 WL 11622999 (N.Y. Sup. Ct. Sept. 29,

2016); *People v. Barnes*, 103 N.Y.S.3d 79 (1st Dep't 2019).  The New York Court of Appeals

denied Plaintiff's application for leave to appeal.  *People v. Barnes*, 133 N.E.3d 428 (N.Y.

2019).

On August 7, 2018, Plaintiff filed the instant action against Defendants.  The District

Court granted Defendants' motion to dismiss the case.  On appeal, the Second Circuit affirmed

the dismissal of Plaintiff's federal claims except for the fabrication of evidence claim regarding

the sale of narcotics.  *Barnes*, 68 F.4th at 126, 133-34.  The Court held that "the district court

erred in concluding that because Barnes was arrested, detained, prosecuted, and convicted for

drug possession simultaneous to the drug sale proceedings, this precludes, as a matter of law, his

ability to plead a deprivation of liberty caused by the drug sale prosecution." *Id.* at 126.[1]  The

Court of Appeals held that, "[b]ecause the prosecution of an individual based on fabricated

evidence may itself constitute a deprivation of liberty . . . Barnes was not required to show that

his drug sale prosecution resulted in additional custody or a conviction in order to sufficiently

allege a claim at the pleading stage." *Id.*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and
citations are omitted, and all alterations are adopted.

The Second Circuit remanded for consideration of the fabrication claim, as well as Plaintiff's potential *habeas corpus* claim and state law claims. *Id.* at 133-34. This Court granted leave for Plaintiff to file the Amended Complaint to include the *habeas corpus* claim. The parties cross-moved for summary judgment.

## II.    STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment . . . ." *Id.* In evaluating "whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* On cross-motions for summary judgment, "the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

"When the burden of proof at trial would fall on the nonmoving party," "the movant [can] point to a lack of evidence," and "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008); *accord Grain D'Or LLC v. Wizman*, No. 21 Civ. 10652, 2023 WL 5609101, at *5 (S.D.N.Y. Aug. 30, 2023). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact

where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *accord Grain*, 2023 WL 5609101, at *5.

The Court construes *pro se* submissions liberally and reads them "to raise the strongest arguments they suggest." *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022). A *pro se* litigant is not "exempt [] from compliance with relevant rules of procedural and substantive law," but their right to self-representation "should not be impaired by harsh application of technical rules." *United States v. Starling*, 76 F.4th 92, 99 (2d Cir. 2023).

## III.    DISCUSSION

### A.    *Habeas Corpus* Claim

Summary judgment is granted to Defendants and denied to Plaintiff on the *habeas corpus* claim because Defendants are not proper respondents. The claim should be directed against "the person who has custody over [Plaintiff]," usually the warden of the state facility where Plaintiff is being held. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *accord Crumble v. United States*, No. 23 Civ. 4427, 2023 WL 5102907, at *6 (S.D.N.Y. Aug. 7, 2023). The Court therefore grants Plaintiff leave to amend the Complaint to name the proper defendant for the *habeas corpus* claim -- the warden of the state facility where Plaintiff is being held. In repleading that claim, Plaintiff must allege and explain how the state court's refusal to vacate Plaintiff's conviction and sentence was "contrary to, or involved an unreasonable application of, clearly established Federal Law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Plaintiff must also allege and explain how he has exhausted his state remedies by "fairly represent[ing]" each of his federal claims "to the highest court of the state," in this case the New York Court of Appeals, and apprising the

court "of both the factual and the legal premises of the federal claims [to be] asserted in the habeas petition." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005).

### B.    Federal Fabrication of Evidence Claim

Summary judgment on the federal fabrication of evidence claim is denied to all parties because a genuine issue of material fact exists as to whether the Officers' accounts of Plaintiff's alleged drug sale were fabricated.  This decision does not address the parties' arguments regarding the claim of alleged fabrication as to the possession charge because the Second Circuit affirmed the previous dismissal of that claim.  *See Barnes*, 68 F.4th at 126.

"To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result."  *Barnes*, 68 F.4th at 128 (2d Cir. 2023).  "[T]o sustain a fabricated-evidence claim, Barnes must also show that his acquittal on the drug sale charge qualified as a favorable termination."  *Id.* at 133.  Defendants do not dispute that Plaintiff's acquittal on the sale charge constitutes a favorable termination of that charge.

Plaintiff asserts that the Officers' fabricated Officer Mauceli's report that he observed Plaintiff conduct a hand-to-hand drug sale.  The arrest report and criminal complaint, as well as the Officers' trial testimony, reflect Officer Mauceli's alleged observation.  The arrest report states that Plaintiff "was observed exchanging a controlled substance with [another] for a quantity of [U.S. Currency]" and charges both sale and possession.  The criminal complaint also charges Plaintiff with sale and possession, and includes Officer Manetta's sworn statement that he was "informed by Officer Nicholas Mauceli" that "he observed [Plaintiff] provide a small object . . . in exchange for money," and that Officer Manetta recovered from Plaintiff one

container that had 26 bags of crack cocaine.  At trial, Officer Manetta similarly testified that his

partner, Officer Mauceli, observed Plaintiff engage in a hand-to-hand drug transaction with Mr.

Davis, who was in possession of two bags of cocaine, and who said that he had purchased the

cocaine from the bearded man, i.e., Plaintiff.

Although Plaintiff does not deny that he handed Mr. Davis something, Plaintiff denies

that any drug sale took place.  He testified before the grand jury and at his deposition in this case

that he did not sell drugs.  Plaintiff states that Mr. Davis was an acquaintance, and Plaintiff was

giving his CDs -- not drugs -- to Mr. Davis and advertising tickets to Plaintiff's Valentine's Day

music event.  Plaintiff asserts that the Officers fabricated the drug sale.

Summary judgment is denied to Plaintiff because, drawing all reasonable inferences

against Plaintiff as the movant, *see Roberts*, 68 F.4th at 88, the evidence could support a finding

that the Officers did not fabricate the sale but instead that Officer Mauceli made an honest

mistake about what he saw Plaintiff and Davis exchange, and that Mr. Davis incorrectly

identified Plaintiff to the police as the person who had sold him the cocaine.  The jury's acquittal

on the sale count means that they did not believe that the People had proved the sale beyond a

reasonable doubt.  But the criminal jury's reasonable doubt about whether Plaintiff made the sale

does not warrant summary judgment for Plaintiff, because here Plaintiff must himself prove the

fabrication claim; he must persuade a civil jury that it is more likely than not that the Officers

intentionally fabricated the sale.

Summary judgment is also denied to Defendants because, drawing all reasonable

inferences against them as the movants, *see Roberts*, 68 F.4th at 88, the evidence could support a

finding that the Officers fabricated the sale narrative and relayed it to the prosecutor, who then

charged Plaintiff with both sale and possession.  When a § 1983 plaintiff relies on his own

testimony to defend against summary judgment, such "testimony alone may be independently sufficient to raise a genuine issue of material fact." *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019); *accord Garcia v. Heath*, 74 F.4th 44, 49 (2d Cir. 2023). While summary judgment for a defendant may be proper when the plaintiff's testimony is "so replete with inconsistencies and improbabilities that no reasonable juror would . . . credit the allegations," *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005), summary judgment for a defendant is unwarranted when the plaintiff's testimony is "consistent and uncomplicated," and not "wholly improbable." *Bellamy*, 914 F.3d at 746; *see also Frost*, 980 F.3d at 246 (explaining that the *Jeffreys* exception is narrow). Like the *Bellamy* plaintiff's denial, Plaintiff's denial here is consistent and uncomplicated: he has consistently testified that he did not sell drugs. Nor is Plaintiff's testimony wholly improbable because Plaintiff testified in the grand jury and at his deposition that he is a musician; he may well have been handing out tickets for a Valentine's Day event on January 21, 2014. *Compare, e.g., Lara v. Port Auth. of N.Y. & N.J.*, No. 20 Civ. 10383, 2023 WL 2185853, at *6 (S.D.N.Y. Feb. 23, 2023) (following *Bellamy* in personal injury context and finding plaintiff's "consistent, uncomplicated, and not improbable" testimony sufficient to create a genuine dispute), *with Roland v. City of New York*, No. 20 Civ. 05392, 2024 WL 2832691, at *20 (S.D.N.Y. June 3, 2024) (granting summary judgment to defendant because plaintiff's testimony was contradictory, inconsistent and incomplete). Where "[t]here are any number of benign or malign explanations" for the discrepancy between Plaintiff's and the Officers' testimony, "it is not the role of the district court to choose among them at the summary judgment stage." *Frost*, 980 F.3d at 247-48 (2d Cir. 2020).

In addition to challenging the fabrication element, Defendants argue that Plaintiff cannot show the fifth element of a fabrication claim, that the plaintiff suffered a deprivation of life,

liberty, or property as a result.  The Second Circuit rejected this argument in this case.  "[T]o insist that a deprivation of liberty requires custody or a conviction overlooks the fact that Barnes's prosecution on the drug sale charge is itself a deprivation of liberty . . . . The use of fabricated evidence in initiating a prosecution or at trial may amount to a deprivation of liberty even in the absence of a conviction based on the fabricated evidence." *Barnes*, 68 F.4th at 129-30.  In addition, and as Defendants concede, Plaintiff may seek to prove greater reputational harm from being an accused drug dealer rather than a mere possessor and/or user of drugs.  Or Plaintiff may have faced additional burdens in the criminal proceedings than he would have absent a sale charge, such as a higher bail requirement or a less favorable plea offer.  *See id.* at 130 & n.2.  Or the "prosecutor's decision to pursue charges rather than to dismiss a complaint without further action" may have been influenced by the Officers' characterization of Plaintiff as a drug dealer.  *Frost*, 980 F.3d at 248.  Evidence of any of these circumstances could satisfy the fifth element of a fabrication claim.

Defendants' argument that false trial testimony cannot be the sole basis for a fabrication of evidence claim due to absolute immunity is correct but unavailing.  *See Coggins v. Buonora*, 776 F.3d 108, 112 (2d Cir. 2015) (explaining that trial or grand jury testimony alone cannot sustain a fabrication-of-evidence claim but can buttress a "claim exist[ing] independently of the [] testimony"); *Townsend v. City of New York*, No. 19 Civ. 10944, 2022 WL 1446532, at *6 (S.D.N.Y. Apr. 20, 2022).  "The fabricated-evidence claim seeks redress for Barnes's *prosecution* on the drug sale charge of which he was acquitted . . . ." *Barnes*, 68 F.4th at 128. Plaintiff's claim that the prosecution was prompted by providing the prosecutor with fabricated evidence is actionable.  *See Coggins*, 776 F.3d at 113 (holding that police reports and officer statements to prosecution "existed before . . . grand jury testimony and [we]re independently

actionable"); *accord Robinson v. City of New York*, No. 15 Civ. 5850, 2017 WL 2414811, at \*5

(S.D.N.Y. June 2, 2017).  "Absolute immunity does not extend to [providing fabricated evidence

to the prosecutor]; otherwise a police officer could immunize his unconstitutional conduct

merely by later testifying about it before the grand [or petit] jury."  *Robinson*, 2017 WL

2414811, at \*5.  If the Officers "create[d] false information . . . and forward[ed] that information

to prosecutors," such actions are not shielded by even qualified immunity, let alone absolute

immunity, because they violated Plaintiff's "clearly established constitutional rights."  *Garnett v.*

*Undercover Officer C0039*, 838 F.3d 265, 275 (2d Cir. 2016).  Unlike the arrest report and

criminal complaint which preceded the prosecution decision, the Officers' trial testimony serves

as only indirect evidence of what they relayed to the prosecutor, not as a standalone basis for

Plaintiff's claim.

## C. State Law Claims

Summary judgment is granted to Defendants and denied to Plaintiff on all of the state law

claims.  Interpreted most favorably to Plaintiff, the Complaint asserts three negligence claims --

negligent infliction of emotional distress, negligent hiring and retention, and failure to intervene;

five intentional torts -- assault and battery, intentional infliction of emotional distress, false arrest

or imprisonment, malicious prosecution and abuse of process; and state constitutional violations

of -- (a) Article I, Section 5, which prohibits cruel and unusual punishment, (b) Article I, Section

6, which ensures procedural and substantive due process, including a right to a fair trial, (c)

Article I, Section 8, which protects freedom of speech, (d) Article I, Section 11, which

guarantees equal protection, and (e) Article I, Section 12, which prohibits unreasonable searches

and seizures, including excessive force.  The Complaint also includes a conspiracy claim.  *See*

*Publicola*, 54 F.4th at 111 (interpreting *pro se* submissions "to raise the strongest arguments they suggest").

Plaintiff's state law claims are subject to New York's notice-of-claim requirement and statutes of limitations. *See Felder v. Casey*, 487 U.S. 131, 152 (1988); *accord Hall v. N.Y.C. Dep't of Educ.*, No. 23 Civ. 10385, 2024 WL 4979288, at *5 (S.D.N.Y. Dec. 3, 2024) ("State notice-of-claim requirements and statutes of limitations are substantive law" that "govern the plaintiff's state and municipal claims.").

### 1.    False Arrest and False Imprisonment

Summary judgment is granted to Defendants and denied to Plaintiff on the false arrest and false imprisonment claims because these claims are premature. In New York, these claims accrue when Plaintiff is "released from custody." *See Jaime v. City of New York*, 237 N.E.3d 796, 806 (N.Y. 2024) (false arrest); *McQueen v. City of New York*, 176 N.Y.S.3d 28, 29 (1st Dep't 2022) (false arrest and false imprisonment). Because Plaintiff is still in custody, the claims have not yet accrued. *See id.* These claims are dismissed without prejudice, meaning that after he is released, Plaintiff may file a new lawsuit in state court asserting these claims, but must comply with the deadlines for filing any notice of claim and for filing a new lawsuit.

### 2.    Conspiracy

Summary judgment is granted to Defendants and denied to Plaintiff on the conspiracy claim because "civil conspiracy is not recognized as an independent tort in [New York]." *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 106 N.Y.S.3d 302, 305 (1st Dep't 2019).

10

### 3.    Remaining State Law Claims

#### a.    Lack of Notice

Except for the state law claims discussed above, which are dismissed on other grounds,

summary judgment is granted to Defendants and denied to Plaintiff on the remaining state law

claims because Plaintiff did not file a timely notice of claim.  In New York, a plaintiff asserting

an "action for damages . . . against any political subdivision of the state" must serve a notice of

claim within "ninety days after the claim arises," CPLR § 217-a; N.Y. Gen. Mun. L. § 50-

e(1)(a).[2]  The notice-of-claim requirement also applies to actions against City employees acting

within the scope of employment because of the City's indemnification obligations.  *See* N.Y.

Gen. Mun. L. § 50-e(1)(b) (requiring notice of claim when the public corporation "has a statutory

obligation to indemnify" an officer, appointee or employee); *id.* § 50-k(3) ("The city shall

indemnify and save harmless its employees . . . acting within the scope of [their] public

employment," unless "the injury . . . resulted from intentional wrongdoing or recklessness on the

part of the employee."); *id.* § 50-j(1) ("[E]very city . . . shall save harmless[] any duly appointed

police officer . . . for any negligent act or tort . . . in the performance of his duties and within the

scope of his employment.").

Plaintiff's claims against the Officers are subject to the notice-of-claim requirement

because the Officers were acting within the scope of their employment.  "[A]n employer --

including the State" or the City, "may be liable when [its] employee acts negligently or

intentionally," so long as "those acts were committed in furtherance of the employer's business

---

[2] The notice of claim requirement does not apply to the surviving federal fabrication of evidence
claim because the requirement is preempted by § 1983. *See Felder*, 487 U.S. at 153; *accord*
*Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir. 2019) (summary order) ("New York's
notice-of-claim requirement . . . is preempted . . . as to [the plaintiff's Section 1983 claims]" but
not the plaintiff's "state-law claims.").

and within the scope of employment." *Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019).  To

evaluate whether an employee acted within the scope of employment, New York courts

> consider, among other factors, the connection between the time, place and
> occasion for the act; the history of the relationship between employer and
> employee as spelled out in actual practice; whether the act is one commonly done
> by such an employee; the extent of departure from normal methods of
> performance; and whether the specific act was one that the employer could
> reasonably have anticipated (i.e., whether it was foreseeable).

*Id.*  The record shows that, on January 21, 2014, Officer Mauceli allegedly observed Plaintiff

engage in a hand-to-hand drug transaction and relayed the information to Officer Manetta; that

Officers Mauceli and Manetta arrested and searched Plaintiff, recovering what appeared to be

illegal drugs; and that Officer Manetta submitted an arrest report and signed the criminal

complaint.  Police officers routinely and in the usual course of their duties observe potential

criminal activities, discuss their observations with fellow officers, make arrests, conduct

searches, memorialize their observations and communicate with prosecutors.  The Officers'

arrest -- made with or without probable cause or excessive force -- and their report of an

observed hand-to-hand transaction that they characterized as a drug transaction -- fabricated or

not -- are "generally foreseeable and [] natural incident[s] of [their] employment" with the City

as police officers.  *See id.*; *Galloway v. State*, 182 N.Y.S.3d 786, 790-91 (3d Dep't 2023)

(finding correction officers' excessive force within the scope of their employment because "it

was clearly foreseeable that a tense encounter could result . . . in the context of normal

employment-related activities in the prison").  The Officers' acts were "intimately related to the

discharge of [their] duties" as police officers and furthered "the legitimate goals of" the police

department and the City, including the arrest of presumed drug dealers.  *See McCormack v. Port*

*Washington Union Free Sch. Dist.*, 625 N.Y.S.2d 57, 58 (2d Dep't 1995) (finding school

principal's willful course of malicious conduct designed to defame and inflict emotional distress

within the scope of employment because the conduct was intimately related to the principal's duties and the school district's legitimate goals); *cf. Rivera*, 142 N.E.3d at 645-46 (finding correctional officers' brutal beating of the inmate plaintiff not within the scope of employment because "the attack was not in furtherance of any employer-related goal whatsoever," and the employer could not "have reasonably anticipated such a flagrant and unjustified use of force"). Nothing in the record suggests that the Officers' actions or motives were unrelated to their employment. *See M.K. v. State*, 191 N.Y.S.3d 538 (3d Dep't 2023) (finding correctional officers' "despicable and perverse undertaking" still "part and parcel of the employment-related function of administering a strip frisk" because it was not conducted "solely to humiliate claimant").[3]

The state law claims are thus dismissed because Plaintiff did not serve the City with a notice of claim for them within ninety days of when they accrued. Many of the claims accrued on January 21, 2014, the date of Plaintiff's arrest and prosecution -- the negligence claims (negligent infliction of emotional distress, negligent hiring and retention, and failure to intervene), certain intentional tort claims (assault and battery, intentional infliction of emotional distress and abuse of process), and certain state constitutional claims (freedom of speech, equal protection and unreasonable search and seizure). *See Ortiz v. City of New York*, 157 N.Y.S.3d 412 (1st Dep't 2021) (assault, battery, negligent hiring and illegal search and seizure); *Bellissino*

---

[3] In any event, even if the Officers are alleged to have engaged in "intentional wrongdoing" outside the scope of their employment, N.Y. Gen. Mun. L. § 50-k(3), the intentional tort claims based on those acts are time barred because Plaintiff did not assert them until August 7, 2018, more than four years after the claims accrued. As discussed below, the applicable statute of limitations is either one year, CPLR § 215(3), or one year and ninety days, N.Y. Gen. Mun. L. § 50-i. Regardless of which applies, the claims lapsed before Plaintiff brought them.

*v. Mitchell*, 995 N.Y.S.2d 603, 605 (2d Dep't 2014) (intentional infliction of emotional distress);

*Behrens v. City of Buffalo*, 192 N.Y.S.3d 869, 870 (4th Dep't 2023) (abuse of process).

It is unclear when the cruel and unusual punishment claim accrued.  It likely accrued

when Plaintiff was first incarcerated on or around January 21, 2014, just after his arrest, because

his pre-trial incarceration presumably was credited toward his sentence of imprisonment.  Even if

the accrual date were much later such that the claim was not time barred, the claim nevertheless

would be dismissed for failure to file a notice of claim.

The remaining intentional tort claim (malicious prosecution) and the due process claim

accrued on June 9, 2016, when Plaintiff was acquitted of the sale charge.  *See Britt v. Legal Aid

Soc'y, Inc.*, 741 N.E.2d 109, 113 (N.Y. 2000) (malicious prosecution); *Spruill v. City of New

York*, 198 N.Y.S.3d 77, 78 (1st Dep't 2023); *Watt v. City of New York*, 740 F. Supp. 3d 212, 226

(E.D.N.Y. 2024) (denial of the right to a fair trial).

These claims, which all accrued on January 21, 2014, or June 9, 2016, are dismissed

because Plaintiff did not serve the required notice at all or did so more than ninety days after the

claim accrued.  Plaintiff served a single notice of claim on August 30, 2016, which stated his

intention to file claims only for false arrest Fourth Amendment unlawful search, both of which

accrued in 2014.  Consequently, the notice was untimely as to these two claims, and ineffective

as to the others.

        **b.**       **Statute of Limitations**

Many of the state law claims -- the claims for intentional torts against any Defendant, and

the claims against the City, but not false arrest and false imprisonment which have not yet

accrued -- are dismissed for the additional reason that they are time barred.[4]  The time-barred

claims are subject either to a one-year or one-year-and-ninety-day limitations period.  As detailed

in the discussion of accrual dates above, these claims accrued more than two years before this

action was filed on August 7, 2018.  Accordingly, they are time barred.

Claims for intentional torts must be filed within one year of when they accrued.  CPLR §

215(3) (prescribing a one-year time limit for, among others, assault, battery and malicious

prosecution); *see Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) ("[CPLR] § 215(3)

provides a one-year statute of limitations for intentional torts."); *see, e.g., Bellissimo*, 995

N.Y.S.2d at 604 (intentional infliction of emotional distress); *Dinerman v. City of New York*

*Admin. for Children's Servs.*, 857 N.Y.S.2d 221, 222 (2d Dep't 2008) (intentional infliction of

emotional distress and abuse of process); *Behrens*, 192 N.Y.S.3d at 870-71 (abuse of process).

Claims against the City must be filed within one year and ninety days pursuant to CPLR

§ 217-a and New York General Municipal Law § 50-i, which apply to actions against "any

political subdivision of the state."  For intentional torts otherwise subject to a shorter statute of

limitations of one year under CPLR § 215(3), courts are split over which limitations period

applies.  *Compare Ndemenoh v. City Univ. of N.Y. (CUNY)-City Coll.*, 121 N.Y.S.3d 3, 4 (1st

Dep't 2020) (applying CPLR § 215(3) to false arrest, false imprisonment and malicious

prosecution claims against the City University of New York); *Behrens*, 192 N.Y.S.3d at 870

(applying CPLR § 215(3) to abuse of process claim against the City of Buffalo), *with Jones v.*

---

[4] The surviving federal fabrication of evidence claim accrued on June 9, 2016, and is subject to a three-year statute of limitations and therefore is not time barred.  *See McDonough v. Smith*, 588 U.S. 109, 114 (2019) ("The statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor."); *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023) ("[I]n New York, the statute of limitations for Section 1983 claims is . . . three years.").

*City of New York*, 555 N.Y.S.2d 788, 789 (1st Dep't 1990) (allowing intentional infliction of

emotional distress claim that was served after one year but within one year and ninety days to

proceed against the City); *Williams v. City of New York*, 62 N.Y.S.3d 401, 406 (2017) (2d Dep't

2017) (stating that the one-year-and-ninety-days statute of limitations of § 50-i "takes precedence

over the one-year period of limitations provided for in CPLR [§] 215").

The negligence claims are subject to a three-year limitations period under CPLR § 214.

*See City of Buffalo v. Maggio*, 238 N.E.2d 494, 494 (N.Y. 1968) (applying the three-year statute

of limitations to negligence claims); *Ubiles v. Ngardingabe*, 148 N.Y.S.3d 193, 194 (1st Dep't

2021) (same).  While the statute of limitations for state constitutional claims is less clear, the

Court sees no reason to depart from the three-year limit for general tort actions.  *See generally*

*Brown v. State*, 674 N.E.2d 1129, 1132 (N.Y. 1996) (characterizing "any action for damages for

violation of a constitutional right against a government or individual defendants" as "[a]

constitutional tort").

Accordingly, except the claims for false arrest and false imprisonment, which have not

accrued, the claims against the City are time barred because they were filed more than one year

and ninety days, the longer of the relevant statutes of limitations, after June 9, 2016, the latest

accrual date.  Except for the due process claim, the accrued claims against the Officers are time

barred because (1) the malicious prosecution claim, an intentional tort, was filed more than one

year after its accrual on June 9, 2016, and (2) all negligence claims, all other intentional torts

(assault and battery, intentional infliction of emotional distress, and abuse of process), and all

other state constitutional claims (cruel and unusual punishment, freedom of speech, equal

protection, and unreasonable search and seizure) were filed more than three years after they

accrued on January 21, 2014.  The due process claim against the Officers accrued on June 9,

16

2016, and is timely under the three-year statute of limitations, but is dismissed for lack of notice as discussed above.

## IV.    CONCLUSION

For the foregoing reasons, summary judgment is **DENIED** to all parties on the federal fabrication of evidence claim against the Officers.  Summary judgment is **GRANTED** to Defendants and **DENIED** to Plaintiff on all other claims without prejudice to refiling the false arrest and imprisonment claims in state court once they accrue.  Plaintiff is **GRANTED LEAVE TO AMEND** the Complaint to replead a *habeas corpus* claim against the warden of the facility where he is housed and to restate the federal fabrication of evidence claim.  Plaintiff may not replead the other claims dismissed herein as the deficiencies cannot be cured with repleading.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 156 and 168.

Dated: February 19, 2025
        New York, New York

_____
        **LORNA G. SCHOFIELD**
      **UNITED STATES DISTRICT JUDGE**